UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LARRY D. STORIE, | ) |
| Plaintiff, | ) |
| vs. | ) CAUSE NO. 1:07-cv-22-WTL-DML |
| RANDY'S AUTO SALES, LLC, et al., | ) |
| Defendants, | ) |
| vs. | ) |
| ST. PAUL MARINE INSURANCE CO., | ) |
| Third-Party Defendant. | ) |

## ENTRY ON PENDING MOTIONS

This cause previously was before the Court on motions for summary judgment filed by each party. The Court granted summary judgment in favor of Defendant Randy's Auto Sales, LLC, ("RAS") and, in light of that ruling, denied Plaintiff Larry Storie's motion for partial summary judgment as moot. Storie successfully appealed that ruling, and the case has now returned from the Court of Appeals for further proceedings. Specifically, certain arguments made by RAS in its summary judgment motion were not addressed in the Court's original ruling because the motion was decided in RAS's favor on other grounds. In addition, Storie's motion for partial summary judgment is no longer moot, and the arguments made therein now need to be addressed.

The mechanism chosen by the parties to bring the remaining issues before the Court was the filing of motions to reconsider (dkt. nos. 103 and 105). Those motions are both **GRANTED**, to the extent that the Court will now address the unresolved issues raised in the parties' motions

for summary judgment, as supplemented by their briefs in support of their motions to reconsider. Having considered the parties' arguments, the Court now **GRANTS IN PART AND DENIES IN PART** RAS's motion for summary judgment and **GRANTS IN PART AND DENIES IN PART** Storie's motion for partial summary judgment to the extent and for the reasons set forth below.

## I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Id.* Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## II. BACKGROUND FACTS

In November 2003, a 2004 Western Star truck (hereinafter "the Truck") was involved in an accident in Indiana that resulted in the death of the driver. The Truck was insured by St. Paul Mercury Insurance Company ("St. Paul"), which determined that it would cost more to repair it than it was worth and therefore declared it a total loss. St. Paul purchased the Truck from its insured in January 2004 and applied for the Truck's Tennessee title as proof of its ownership.

2

St. Paul did not apply for a salvage title; the reason why and whether that was appropriate under Tennessee law are irrelevant to the issues now before the Court.

The title requested by St. Paul was not issued by Tennessee until March 19, 2004. By that time, the Truck had changed hands several times. Specifically, on January 13, 2004, RAS purchased the Truck from St. Paul. On January 22, 2004, RAS sold the Truck to West Side Auto Parts, Inc., ("West Side") in Owensboro, Kentucky. On February 26, 2004, West Side sold the Truck to Duckett Truck Center, Inc., ("Duckett") in Farmington, Missouri.

On or about April 13, 2004, St. Paul sent the Tennessee title to RAS; RAS signed it over to West Side, which, in turn, signed it over to Duckett. After performing repairs on the Truck, Duckett sold it to Storie in June 2004.

### III. DISCUSSION

In this case, Storie asserts a cause of action against RAS pursuant to Ind. Code 9-22-3-36, which provides:

> A person aggrieved by a violation of this chapter may recover the actual damages sustained, together with costs and reasonable attorney's fees. In the court's discretion the court may increase the award of damages to:
>
> (1) an amount not to exceed three (3) times the actual damages sustained; or
>
> (2) two thousand five hundred dollars ($2,500);
>
> whichever is greater.

The statutory violation alleged by Storie is a violation of Ind. Code 9-22-3-11(d) (2004)[1] ("the Statute") which provided:

---

[1] In 2006, non-substantive changes were made to this statute; under the current version of the statute the provision at issue is contained in subsection (e). The Court will refer to the statute as it existed at the time the relevant events occurred.

> Any other person acquiring a wrecked or damaged motor vehicle, motorcycle, semitrailer, or recreational vehicle that meets at least one (1) of the criteria set forth in section 3 of this chapter, which acquisition is not evidenced by a certificate of salvage title, shall apply to the bureau within thirty-one (31) days after receipt of the certificate of title for a certificate of salvage title.

Storie also asserts a fraud claim against RAS which also is premised on its alleged breach of the duty to obtain a salvage title pursuant to the Statute.

### A. RAS's Motion for Summary Judgment and Motion to Reconsider

The Indiana Supreme Court has ruled that the fact that RAS no longer owned the Truck when it received the Truck's title did not relieve RAS of its obligation to apply for a certificate of salvage title pursuant to the Statute. However, RAS has advanced several other arguments in support of its motion for summary judgment, each of which is addressed, in turn, below.[2]

#### *The Amount in Controversy*

Storie asserts that jurisdiction over this case is appropriate pursuant to 28 U.S.C. § 1332(a). RAS argues in its motion to reconsider that the amount in controversy in this case does not exceed $75,000 and therefore the requirements of § 1332(a) are not satisfied and this Court lacks subject matter jurisdiction over this case. This argument was made by RAS in an earlier motion to dismiss and was rejected. RAS raises nothing new this time around. For the same reasons set forth in the order denying the motion to dismiss (dkt. no. 45), the Court reaffirms that the amount in controversy requirement is satisfied in this case.

---

[2] In addition to the arguments discussed herein, RAS raises two additional arguments: (1) "Indiana law is the controlling law of the case and thus looks to the Tennessee salvage title law"; and (2) RAS "has complied with Indiana law as to the title in question as a dealer can assign an out of state title, and rely on the validity of that issuing state's title under the UCC and other legal arguments." These arguments are foreclosed by the rulings of the Seventh Circuit and the Indiana Supreme Court, and therefore are not discussed herein.

4

*The Statute's Application to Dealers*

RAS argues that the Statute does not apply to dealers and therefore it, as a dealer, had no obligation to apply for a salvage title. The premise of RAS's argument is that dealers are treated as a "special class" in Indiana Code 9-22-3 and therefore when the Statute uses the term "any other person" it means "any other person other than a dealer." This argument is without merit.

Indiana Code 9-22-3 sets forth the laws applicable to salvage motor vehicles in Indiana. If a vehicle for which a salvage title has been issued is later repaired and made operable, a "rebuilt vehicle" title must be obtained for it. *See* Ind. Code 9-22-3-16. Indiana Code 9-22-3-30 provides that a "dealer" or "any other person who sells, exchanges, or transfers at least five (5) vehicles each year" must, when selling a "rebuilt vehicle," make certain disclosures to the buyer. RAS argues that because in that code section "dealers" are clearly separated from "any other person," when the term "any other person" is used elsewhere in the same chapter–like in the Statute–it must be read as excluding dealers.[3] However, an examination of the plain language of Indiana Code 9-22-3-11 reveals that the term "any other person" has a different meaning in that section.

Indiana Code 9-22-3-11 establishes the obligation to apply for a salvage title in Indiana. It first sets forth the obligations that apply to an insurance company that has made an agreed settlement with a vehicle's owner after determining that it is economically impractical to repair

---

[3]RAS also points to several other sections within 9-22-3 that speak specifically to the obligations of dealers and argues that these other sections "instruct the dealer what to do" while the Statute instructs everyone else. The problem with that argument is that none of the other sections address the same obligation as that set forth in the Statute; that is, none of them involve a vehicle that does not yet have a salvage title and yet meets the definition of a salvage vehicle. Only Ind. Code 9-22-3-11 provides instructions on what to do when such a vehicle is acquired, and the instructions for a dealer are contained in the Statute.

the vehicle. Ind. Code 9-22-3-11(b) (2004). It then sets forth the obligations that apply to "a self-insured entity [that] is the owner of a salvage motor vehicle." Ind. Code 9-22-3-11(c) (2004). Finally, the Statute sets forth the obligations for "[a]ny other person" who acquires a salvage motor vehicle that does not already have a certificate of salvage title. Clearly, then, "any other person" as used in the Statute sets apart insurers and self-insured entities, not dealers.[4] Pursuant to the Statute, a dealer who acquires a salvage vehicle that does not already have a certificate of salvage title is included in the category of "any other person" and therefore is required to apply for one.

### *The Damage to the Truck*

RAS next argues that the amount of damage to the Truck was not such that a certificate of salvage title was required under Indiana law.[5] Although it is not entirely clear, this argument appears to be based upon RAS's belief that pursuant to Ind. Code 9-22-3-3, a salvage title is only required when the cost of repairing a wrecked vehicle exceeds 70% of the fair market value of the vehicle immediately before the accident. However, the obligation to apply for a salvage title under the Statute is triggered when a person acquires "a wrecked or damaged motor vehicle . . . that meets at least one (1) of the criteria set forth in section 3 of this chapter . . . ." Ind. Code 9-

---

[4] RAS argues that the word "other" would be rendered meaningless if it were not read to exclude dealers. This argument is without merit; the word "other" as used in the Statute is clearly meant to distinguish the insurers and self-insured entities that are addressed in the immediately preceding subsections.

[5] Storie argues that RAS "selectively cites language from the Seventh Circuit Court of Appeals' Order to make it appear there is still an open issue as to . . . whether the truck was insufficiently damaged to trigger the salvage-title requirement . . ." Storie Brief in Opposition to Defendant's Motion to Reconsider at 5 (dkt. no. 107). The Court is perplexed by this argument, as the Seventh Circuit's instruction that this court "should consider [RAS's] argument that the vehicle was insufficiently damaged to trigger the salvage-title requirement"–language quoted by Storie–could not be more clear.

22-3-3(a), in turn, sets forth three criteria, only one of which involves, as RAS puts it, "a math problem," *see* RAS Brief in Support of Motion for Summary Judgment (dkt. no. 74) at 13, and that criterion applies only to self-insured owners. The criterion that applies in this case is found in Ind. Code 9-22-3-3(a)(1): "An insurance company has determined that it is economically impractical to repair the wrecked or damaged motor vehicle . . . and has made an agreed settlement with the insured or claimant." This is precisely what occurred in this case. *See* Dep. of Timothy Richardson at 34 (St. Paul determined the Truck was a total loss, meaning that the cost of repairing it exceeded its value). It was this determination by St. Paul, not the math, that brought the Truck under the purview of the Statute and required RAS to apply for a salvage title.

RAS suggests that St. Paul did not actually determine that it was economically impractical to repair the Truck, but rather decided to declare the Truck a total loss "to keep the business of a large fleet and because most fatalities are paid off due to the psychological difficulties of having another company driver taking over a 'death truck.'" RAS Brief in Support of Motion for Summary Judgment (dkt. no. 74) at 2. The only evidence RAS cites in support of this argument is the deposition testimony of Randy Robinson, the owner of RAS who purchased the Truck from St. Paul. Robinson testified that a St. Paul adjuster whose name he did not recall told him that the truck was not a total loss but that St. Paul was going to pay the loss anyway because there had been a fatality in it. Robinson Dep. at 29. This testimony is inadmissible hearsay, however. Further, Robinson's testimony regarding St. Paul's motive for doing so is his own speculation: "And what I got the feeling of is that they, probably – which happens in many instances, St. Paul was probably an insurer of a large fleet that owns this truck. . . . A lot of times insurance companies will pay a loss when it's not a salvage vehicle to keep peace in the family. They don't want to lose the business of, you know, of the company that

7

they're insuring." Robinson Dep. at 35-36. The hearsay and speculation offered by Robinson does not create an issue of fact regarding whether St. Paul determined that it was economically impractical to repair the Truck.

### *Storie's Fraud Claim*

In addition to his claim under Ind. Code 9-22-3-36, Storie also asserts a claim for fraudulent omission. In its motion to reconsider, RAS argues that it is entitled to summary judgment on that claim because "even if [RAS] had a statutory obligation to obtain a salvage title, Store could not reasonably rely on [RAS's] actions or inactions when he had no contact with [RAS] before purchasing [the Truck]." RAS Brief on Motion to Reconsider at 12. The Court sees an even more fundamental problem with Storie's fraud claim, however. Fraud requires an intent to deceive, and in this case there is no allegation, let alone evidence, that RAS intended to deceive anyone when it failed to obtain a salvage title. Rather, the undisputed evidence of record is the testimony of Robinson, the owner of RAS, who adamantly testified that he did not believe he was required to obtain a salvage title for the Truck. This belief clearly was not unreasonable, inasmuch as it took certification of the question to the Indiana Supreme Court in order to arrive at the correct interpretation of the Statute. Storie has offered no evidence that calls Robinson's testimony into question or suggests that the RAS's failure to obtain a salvage title was motivated by a desire to deceive anyone regarding the history or condition of the Truck.[6] Accordingly, the Court finds that RAS is entitled to summary judgment on Storie's fraud claim.

---

[6]Storie's only response to RAS's motion with regard to the fraud claim is to point out that the Court previously denied RAS's motion to dismiss the fraud claim. However, whether Storie adequately pled a fraud claim is a very different question than whether Storie has evidence to support the claim.

*Conclusion*

For the reasons set forth above, the Court **GRANTS** RAS's motion to reconsider and, having reconsidered RAS's motion for summary judgment, now **DENIES** RAS's motion for summary judgment with regard to Storie's statutory claim and **GRANTS** RAS's motion for summary judgment with regard to Storie's fraudulent omission claim.

**B. Storie's Motion for Partial Summary Judgment and Motion to Reconsider**

Storie moves for partial summary judgment on Count I of his Complaint, which is his claim pursuant to Ind. Code 9-22-3-36 for violation of the Statute. Storie argues that there is no genuine issue of fact on the following issues: (1) the truck had been declared a total loss by St. Paul; and (2) the Statute required RAS to apply for a salvage title and it failed to do so. For the reasons discussed at length above, Storie is correct that he is entitled to summary judgment on these distinct issues.

That said, however, Storie's suggestion that entry of summary judgment on these issues is sufficient to establish RAS's liability under Ind. Code 9-22-3-36 is incorrect. The partial summary judgment to which Storie is entitled establishes that RAS violated the Statute. However, only a "person aggrieved by a violation of the Statute" has a claim under Ind. Code 9-22-3-36, and Storie has not yet articulated how he was "aggrieved" by RAS's failure to apply for a salvage title. Storie has established that he would not have purchased the Truck if he had known that it had a salvage history. Storie Aff. at ¶ 6 ("If I had seen a salvage notation on the tractor's title prior to the sale, I never would have purchased it."). However, Storie also concedes in his affidavit that Duckett did not provide the title to Storie at the time of sale, but rather mailed it to Storie after he had signed the purchase contract and paid the purchase price of $89,500. *Id.* at ¶ 5. Therefore even if the title had been a salvage title, it would not have

9

prevented Storie from purchasing the Truck because he would not have seen the salvage notation until after the sale.

Storie addressed this argument in its reply in support of its motion for partial summary judgment. Citing the deposition testimony of James Ward, owner of Duckett, Storie asserts: "This argument would have merit, except for the fact that Duckett itself would never have purchased the tractor if it came with a salvage title. . . . It is clear from the above testimony that a salvage title would have prevented the sale to Plaintiff, because Duckett itself would never have purchased the [Truck] if it came with a salvage title." Storie's Reply at 2 (dkt. no. 78). However, Storie has not pointed to any evidence that demonstrates that Duckett reviewed the title before purchasing the truck. Rather, the title itself suggests that Duckett, like Storie, purchased the Truck without reviewing the title, as it reflects that Duckett purchased the truck from Westside on February 26, 2004, over a month before RAS received the title from St. Paul. If that is the case, RAS could not possibly have complied with its obligation to apply for a salvage title until *after* Duckett had purchased the Truck, and therefore Duckett's decision to purchase the truck could not have been affected by RAS's failure to obtain a salvage title.

Accordingly, while Storie is entitled to partial summary judgment on the issue of whether RAS violated the Statute, a question of fact remains regarding whether that violation was the proximate cause of any harm to Storie. Therefore, Storie is not entitled to summary judgment with regard to RAS's liability under Ind. Code 9-22-3-36.

## CONCLUSION

For the reasons set forth above, both parties' motions to reconsider (dkt. nos. 103 and 105) are **GRANTED** in that the Court has reexamined the parties' earlier motions for summary judgment. RAS's motion for summary judgment is now **GRANTED** as to Storie's claim for

fraudulent omission and **DENIED** with regard to Storie's claim pursuant to Ind. Code 9-22-3-36. Storie's motion for partial summary judgment is **GRANTED** with respect whether RAS had an obligation to obtain a certification of salvage title for the Truck pursuant to the Statute and whether RAS violated that obligation. However, Storie's motion for partial summary judgment is **DENIED** with respect to whether Storie was "aggrieved" by that violation and therefore is entitled to damages pursuant to Ind. Code 9-22-3-36. That issue, as well as the proper measure of damages in the event RAS is found liable, remains to be decided at trial.

This case will now be set for trial by separate entry. The parties are reminded of their pretrial filing obligations contained in section VIII of the case management plan in this case (dkt. no. 28). In addition, the Court requests that Magistrate Judge Lynch set this case for a settlement conference at her earliest convenience, and the parties are urged to fully consider the relative strengths and weaknesses of their positions in this case, including the available evidence regarding the issues that remain for trial.

SO ORDERED: 06/17/2011

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification